56 CCPA

**Application of Kenneth A. METCALFE and William H. Lowe.**

**Patent Appeal No. 8158.**

United States Court of Customs and Patent Appeals.

June 5, 1969.

Alan K. Roberts, Roberts & Cohen, New York City, attorneys of record, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, COLLINS and NEESE, Judges, sitting by designation, and ALMOND and BALDWIN, Judges.

RICH, Acting Chief Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirm-

ing the rejection of claims 10–14 of application serial No. 293,853, filed July 9, 1963, entitled "Liquid Developer for Electrostatic Images."

## The Invention and Claims

The invention relates to a liquid developer for use in electrostatic printing processes. Broadly, such processes involve the creation of latent electrostatic images on a suitable substrate, such as paper, followed by "development" of the images by the application of pigment particles to render them visible. The particles, which have an electrical charge of their own, satisfy the charge of the electrostatic image and, being thereby deposited on the latter, render it visible. In liquid development of electrostatic images, the pigment particles are suspended in a liquid carrier which usually has high electrical resistivity to prevent the electrostatic image from leaking away prior to full development.

Appellants have discovered that the shelf life or "keeping qualities" of such liquid developers can be improved by dissolving therein a resin having a relatively small attraction with respect to the pigment particles so that only about 2% of the resin adheres to the particles. It appears that electrical charges are formed in the resin-containing liquid carrier and on the resin-coated pigment particles as a consequence of what appellants refer to as the "well known theory that a resin immersed in a liquid carrier will possess an electrical charge." Since like charges repel each other, the resin acts as a dispersing agent in that the thinly coated pigment particles are forced apart. According to appellants, the particles remain in suspension for long periods without settling or clumping together, thereby avoiding sedimentation during storage.

Claim 10 is representative (emphasis added):

> 10. An improved liquid developer consisting essentially of pigment particles and a carrier liquid, said pigment particles being suspended in said carrier liquid, said liquid having relatively high electrical insulating properties, and *a resin in said carrier liquid and having an oil length of not less than about 60% and being substantially fully polymerized,* the pigment particles having a diameter of not greater than one micron and being insoluble in the carrier liquid, *the resin being soluble in the carrier liquid, there being approximately six parts of resin to one part of pigment by weight, the said resin being a wetting agent for the pigment particles and being such that only about two percent of the said resin in relation to the weight of the pigment is held to the pigment,* whereby the pigment particles are forced apart to deposit independently when subjected to an electrostatic field.

All the claims are rejected on three grounds: (1) Obviousness—35 U.S.C. § 103, (2) Insufficiency of Disclosure—35 U.S.C. § 112, and (3) Undue Breadth of Claims—35 U.S.C. § 112.

## Obviousness

In support of the obviousness rejection the Patent Office relies on two United States patents:

| | | | |
|---|---|---|---|
| Metcalfe | 3,032,432 | May 1, | 1962 |
| Mayer | 2,891,911 | June 23, | 1959 |

Metcalfe discloses a liquid developer composition for developing electrostatic images containing a pigment, a high-resistivity carrier liquid, and a resin which functions as a "combined control and fixing agent." It appears that the resin is the Metcalfe developer improves tone control during development by decreasing the electrical resistivity of the liquid carrier, thereby effecting a limited bleeding away of the electrostatic image.

The only specific resins mentioned in Metcalfe are "Rhodene L6/100 (a linseed oil modified alkyd resin of medium oil length)" and "Pentarol 20 (a phenol modified pentaerythritolester of [sic] resin)." In the only specific developer disclosed in Metcalfe these two resins are employed in equal amounts which provide a resin: pigment ratio of 1:5. Mayer

is relied on "only for its disclosure of a pigment particle size below one micron."

■ Sustaining the rejection of all claims as "unpatentable over Metcalfe * * * in view of Mayer et al., under 35 U.S.C. 103," the board said:

Since the medium oil length resin in Metcalfe et al. apparently would be at least near 60% in length, and is dissolved in the same carrier liquid used by appellants, the only material distinction that we see in claim 10 over the references is the ratio of 6 parts resin per part pigment. The functional properties recited in the claims appear to be true of Metcalfe et al., at least to a material degree. * * * We see no reason why the ratio of 6 parts of resin to one part of pigment should be critical, especially as appellants' Example 3 uses a ratio of 2.4:1. Adjustment of proportions is usually a routine matter, the optimum values depending upon the specific result desired.

We will not affirm this rejection because we are convinced that "the only material distinction" referred to by the board contributes quite materially to the unobviousness of appellants' invention "as a whole" (35 U.S.C. § 103), and because we see nothing in either of the cited references which would lead one of ordinary skill in the art to use, for any reason, thirty times the amount of the resins used by Metcalfe (6:1 claimed by appellants vs. 1:5 in Metcalfe) or to expect that carrier-soluble resins could be used as dispersing agents in such developers.

### Sufficiency of Disclosure

Appellants have broadly disclosed that the resin used in the composition of their invention must be soluble in the carrier employed to an extent which makes it possible to have a resin:pigment ratio of about 6:1. It is also disclosed that the resin must be chosen so that only about 2% thereof adheres to the pigment. In addition, appellants' specification contains three examples in which specific resins are shown to work with specific pigments and liquid carriers. In these examples, however, the resins employed are identified only by type, trademark, and manufacturer. Thus, the resins are identified in Example 1 as "a long oil linseed oil modified alkyd resin known under the trade mark PC2/70 of the Polymer Corp. Pty. Ltd., Sydney, oil length 72%"; in Example 2 as " 'Paralac 10' * * * the trade mark of Imperial Chemical Industries for a long oil linseed oil modified alkyd resin"; and in Example 3 as " 'Super Beckosol 1352' resin (an isophthalic long oil alkyd by Reichold Chemical Ind. Ltd., of U.S.A.)." In response to the examiner's criticism of the manner of identifying these resins, appellants submitted a pamphlet, available at the time their application was filed, disclosing values for the following properties of "Paralac 10," the resin referred to in Example 2: percentage of nonvolatiles, viscosity, color, acid number, specific gravity, oil length, oil type, miscibility with white spirit and type of acid or glycol.*

■■ With respect to the alleged insufficiency of appellants' disclosure, the board begins by opining as follows:

It appears to us that the *chemical identity* of appellants' resin is critical, since the example in Metcalfe et al. * * * has the same pigment and carrier as the present disclosure, and a soluble resin of the *same general type* as that of the instant application, yet presumably the reference developer represents the prior art which appellants state they have improved. [Emphasis added.]

Assuming arguendo, that the resins disclosed in Metcalfe possessed the properties which appellants have disclosed as necessary for a resin used in their invention, we do not see how this fact

---

* Appellants also submitted a pamphlet disclosing certain properties of "Super-Beckosol 1352–60," but as noted by the board "only Super-Beckosol 1352 (not 1352–60) is used in any example."

would render critical the "chemical identity" of resins used by appellants. There would still be a very material difference between appellants' developer and that disclosed in Metcalfe, namely, the great disparity in the amounts of resin employed. Moreover, there is nothing in the record to suggest that the "chemical identity" of the resin employed in appellants' developer is critical. To the contrary, it is clear from the record that appellants' resin is not involved in any chemical reaction during the preparation or use of the developer and that the only properties of the resin that are important are physical ones, the solubility in a given carrier and the ability to adhere to a given pigment to a specific degree.

The board continued:

The commercial pamphlets in the record are from Australian companies, and it is not clear whether these pamphlets are available in the U.S.A.

We are unaware of any authority holding that published material of the type under consideration must be from the United States. Section 112 simply requires that a disclosure of an invention enable any man skilled in the relevant art to make and use it. No mention of convenience is made; thus, even if the origin of the material is in Australia, this is merely a matter of degree of convenience and not a matter of lack of availability.

■■ Concluding its remarks on the issue of sufficiency of disclosure, the board stated:

The properties disclosed in these pamphlets are only the following: non-volatiles, viscosity, color, acid number, specific gravity, oil length, oil type, miscibility with white spirit, and type of acid or glycol. This information relates to paints and varnishes. In our opinion, workers in the developer art could not decide from these properties whether the resin would have the necessary slight attraction for the pigment, or whether it would be an effective dispersing agent. We consider it

significant that none of the examples in appellants' specification mentions any of the properties which appellants disclose as essential for obtaining their improved shelf-life of the developer.

Assuming the correctness of the board's opinion with respect to what a worker in the art could decide from the properties mentioned, we do not see its relevance to the issue. It seems to us, that when, in a working example, an applicant identifies a material (here a resin) as being useful in the practice of his invention, it is unnecessary for the worker skilled in the art to *redetermine* the usefulness of that material in the disclosed invention. Here, for instance, appellants' specifications says, in effect: to practice this invention, use these general materials in these specific proportions and, as examples, *these* are some resins that work. With respect to the examples, there is nothing left for the worker in the art to determine. Also, we think it clear that one skilled in the art would understand from appellants' working examples that the resins referred to therein had been found to possess the properties, i. e., carrier solubility and affinity for the pigment particles, which appellants disclose earlier in their specification as being essential for obtaining the improved shelf life or their developer. We see no reason to require that appellants restate the obvious.

■ The solicitor propounds a theory, not advanced by the board, as to why appellants' disclosure is inadequate. Although we do not ordinarily consider such new theories, we will do so here because it is one that is often advanced in cases such as this and because it may well have been the unstated basis of portions of the board's opinion quoted above. The solicitor contends:

* * * the present disclosure * * is insufficient to satisfy either or both of the "enabling" or "best mode" requirements of 35 USC 112. Not only *may* there be a change in the product under the same trademark * * * but the manufacturer *may* decide to dis-

continue the product completely. These are routine commercial occurrences. In either case, the disclosure at bar may suddenly become a substantially meaningless gesture to the art. [Emphasis added.]

Stated as a generality, the solicitor's argument is plausible. Where it is lacking in persuasiveness, however, is that it fails to consider that each case must be decided on its own facts. It is no doubt true that a manufacturer *may* change a product under a given trademark and *may* even discontinue a product altogether. It is also no doubt true that in some instances, where either of these occurs, the worker skilled in the art to which a given invention pertains may not be able by himself to duplicate (or have duplicated) that precise product or prepare (or have prepared) a substitute therefor. But carrying this rationale to the extreme (admittedly a somewhat absurd one) it is always possible that the practice of a given patented invention may become impossible because an essential material (or even apparatus) becomes unavailable due to a lack of raw materials, public disaster, or other occurrence not within the control of the patentee; and this possibility exists whether or not the "essential material" was identified in the patent only by trademark. What we are driving at is this: (1) there is always the possibility that sometime after the issuance of a patent, the disclosure which was initially enabling may become "unenabling" and (2) whether a given disclosure which identifies a material to be employed in the practice of the claimed invention is "enabling" within the meaning of 35 U.S.C. § 112, must be decided by a rule of reason applied to the facts of the case. In the case before us, there are several factors which we think militate in appellants' favor. First, the resins employed in the three examples are not identified only by trademark and manufacturer. In these examples, each resin is also identified by type, viz., "long oil linseed oil modified alkyd resin" and "isophthalic long oil alkyd." With respect to the resin of

Example II there is also the bulletin which provides a number of its properties. Should the trademarked products become unavailable, we think that this information would be of great assistance to a worker in the art seeking to select or prepare an equivalent resin.

A second fact which we find significant is that appellants have identified, as suitable for the practice of their invention, three different materials from three different manufacturers. The probability of all of these manufacturers choosing to cease manufacture or to change the composition of their respective products is far less than the probability of any one of them choosing to do so.

Third, we find it significant that certain physical properties of the resin employed in appellants' invention, rather than its chemical identity, are important. Thus, one skilled in the art seeking a substitute for the resins which appellants have disclosed would "not [be] faced with the problem of unpredictability due to chemical reactions." In re Corr, 347 F. 2d 578, 52 CCPA 1505 (1965).

We also note that the specific resins referred to in the Metcalfe patent are disclosed with no more specificity than are those disclosed in appellants' specification—and yet, while finding appellants' disclosure to be lacking in specificity with respect to these resins, the board finds the Metcalfe disclosure and that of appellants to be sufficiently specific to compare them and to conclude that:

> Since the medium oil length resin in Metcalfe et al. apparently would be at least near 60% in length, and is dissolved in the same carrier liquid used by appellants, the only material distinction that we see in claim 10 over the references is the ratio of 6 parts resin per part pigment.

Taking all of the above factors into account, we find that the possibility that at some future date appellants' disclosure will no longer be sufficient to

enable one skilled in the art to practice appellants' invention is too speculative to justify a holding that the disclosure is insufficient under § 112.

### Undue Breadth

■ The board affirmed the rejection of the appealed claims as unduly broad in their definition of the resin saying, inter alia:

> * * * appellants' carrier liquid and pigment apparently are the same is in the prior art, but his resin is not. In our opinion, it is proper here to claim the carrier and pigment broadly, but not the resin * * *. We note that claims 10 and 11 are not even limited to alkyd resins, but includes [sic] varnishes made from a drying oil and a natural resin. The definition of the resins in claims 12, 13 and 14 appears to include the resins of the Metcalfe et al. patent * * *.

We agree with the board that appellants' claims are broad in the recitation of the resin. But we cannot agree that they are unduly so; in our opinion, they are no broader than the invention which appellants have disclosed. Though appellants' definition of the resins useful in their invention is not limited to alkyd resins and may include the resins disclosed in Metcalfe, as mentioned above in our discussion of the § 103 rejection, there are other limitations which materially distinguish the claimed subject matter as a whole from that disclosed in the cited prior art. As we also pointed out above, the physical properties, rather than chemical identity of a given resin, are here important in determining its suitability for use in appellants' invention. In appropriate cases, such as this, where the chemical identity of a material is not critical, we see no reason why an applicant should not be permitted to define that material partly in terms of its physical properties or the function which it performs.

The decision of the board is *reversed*.

*REVERSED*