**In the Matter of the Application of Neil COLEMAN.**

**Patent Appeal No. 8831.**

United States Court of Customs and Patent Appeals.

Feb. 15, 1973.

William E. Anderson, Robert B. Jones, A. Sidney Katz, Chicago, Ill. (Fitch, Even, Tabin & Luedeka, Chicago, Ill.), attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the examiner's final rejection of claims 1–3, 6–13, and 15–18 of appellant's application [1] entitled "Flexible Conduit" as failing to satisfy the requirements of 35 U.S.C. § 112. We reverse.

The claims on appeal are drawn to a flexible conduit comprising a strip-wound metal hose encased in a seamless plastic jacket and its method of manufacture. The plastic jacket is extruded onto the hose, and a problem which arises is the penetration of the plastic into the interstices of the hose convolutions which leads to wrinkling of the jacket upon flexure. Appellant solves the problem by forming a layer of a "suitable elastic adhesive material" in between the metal hose and plastic jacket.

The involved subject matter is more clearly understood with reference to Fig. 1 of appellant's specification, reproduced below.

In the drawing, the conduit 10 comprises a metal tube 11 having adjacent convolutions 12 spaced apart to form interstices

1. Serial No 654,879 filed July 20, 1967.

14, an intermediate bonding layer 16 of adhesive material, and a protective plastic jacket 18.

Claim 1 is representative of the article claims on appeal and, with subparagraphing ours, reads as follows:

> 1. A flexible conduit comprising
>
> a convoluted metal tube having each convolution axially movable relative to adjoining convolutions, said tube being extended from its most compressed condition so that adjoining convolutions are spaced apart to form full interstices therebetween,
>
> an adhesive layer bonded to the outer surface of said tube at least within the regions of said interstices, said adhesive layer having sufficient elasticity to elastically yield with flexure of the tube, and
>
> a seamless plastic jacket having a portion thereof fully extending into said interstices and bonded to the outer surfaces of said layer,
>
> said layer having sufficient adhesive and cohesive properties to resist the radial forces acting on said portion of the jacket extending into said interstices at the concave portion of a bend due to the compression of adjacent tube convolutions so that the occurrence of significant relative radial displacement between said jacket and said tube on flexure of the conduit is substantially prevented.

The remaining article claims depend from claim 1 and impose various limitations on the structure of the conduit and materials of which it is made. The method is set forth in independent claim 9 in language not materially different than that used in claim 1. The other method claims depend from claim 9 and further limit the method steps and materials used.

The sole issue before us is whether or not the specification is enabling with respect to the nature of the adhesive material used to form the intermediate layer. The board agreed with the examiner that the specification is "indefinite, insufficient and incomplete" in its failure to provide any specific example of a suitable adhesive and that undue experimentation would therefore be required to practice the claimed invention.

The specification provides generic disclosure couched in terms of the properties the adhesive must possess and the functions it must perform. For example, the adhesive layer must have "sufficient elasticity to elastically or resiliently yield with flexure of the tube" and must consist of "a suitable primer having sufficient adhesive and cohesive strength to resist the radial forces tending to dislodge the [spiral] rib [formed between the hose convolutions] from its interstitial position at the concave portion of a bend due to the compression of the adjacent convolusions thereat * * *."

There is also more specific disclosure of the preferred adhesive which is:

> [A] plastisol primer; that is, a primer generally intended for bonding metal to a polyvinyl chloride resin which is dispersed in a liquid plasticizer to form a liquid or paste, but generally having a relatively low viscosity and being in liquid form for molding. However, as utilized in accordance with the present invention, the plastisol primer is not used in conjunction with a plastisol, but with an extruded polyvinyl chloride compound. One preferred material is a plastisol primer of the B. F. Goodrich Industrial Products Company, Product No. A–1104–B. This primer has a resin base in a solvent of methyl ethyl ketone, the total solids being 18 to 20 per cent. The dry coating forming layer 16, when composed of this material, has a specific gravity of about 1.-19 and a Durometer hardness of approximately 90.

Finally, the disclosure includes a list of eleven "[o]ther materials tried and found to be satisfactory" identified solely by trademark or trade name and manufacturer.

The board focused primarily on the adequacy of the description of specific

adhesives by trademark or trade name in light of In re Metcalfe, 410 F.2d 1378, 56 CCPA 1191 (1969). In *Metcalfe* this court reversed a holding of insufficient disclosure and rejected arguments advanced by the board and solicitor respecting the use of trademarks or trade names to identify materials on the facts there present. The board here found factual distinctions which compelled, in its view, a result different than that reached in *Metcalfe*.

## OPINION

◼ We conclude that when viewed as a whole, the specification enables one skilled in the art to make and use the claimed invention without undue experimentation. See In re Long, 368 F.2d 892, 895, 54 CCPA 835, 838 (1966); In re Borkowski, 422 F.2d 904, 908, 57 CCPA 946, 950 (1970). We do not find the area of technology with which the present subject matter is concerned to be particularly complex or unpredictable. See In re Fisher, 427 F.2d 833, 839, 57 CCPA 1099, 1108 (1970); In re Corr, 347 F.2d 578, 580, 52 CCPA 1505, 1507 (1965). Given the generic disclosure, more specific disclosure of the preferred embodiment, and listing of suitable materials by trademark, as explained above, we are satisfied that the scope of enablement is commensurate with the scope of the claimed subject matter. See In re Marzocchi, 439 F.2d 220, 58 CCPA 1069 (1971).

In reviewing the rejection before us, we have appropriately looked to the disclosure in its entirety and have arrived at a conclusion which is necessarily to some extent subjective. However, there have been no challenges to the asserted usefulness of adhesives which possess the characteristics described in appellant's specification or the materials identified by trademark or trade name to channel the inquiry. The implicit allegation that those skilled in the art could not ascertain suitable adhesives without exhaustive investigation is, to us, unreasonable and unrealistic in this case. In short, we find ourselves confronted with no adequate justification for denying appellant patent protection of the scope sought.

◼ The board's opinion focuses too narrowly on the listing of specific materials by trademark or trade name. We stress the need to inject the totality of the disclosure into the examination for sufficiency under § 112 of this specification. *In re Metcalfe*, supra, should not be regarded as setting inviolate bounds for permissible and impermissible use of trademark or trade name designations. Each case must rest on the entirety of its particular facts. Worth repeating is the salient response by Judge Rich, writing for the court in *Metcalfe*, to the solicitor's objections to the use of trademark or trade name identification of materials:

> What we are driving at is this: (1) there is always the possibility that sometime after the issuance of a patent, the disclosure which was initially enabling may become "unenabling" and (2) whether a given disclosure which identifies a material to be employed in the practice of the claimed invention is "enabling" within the meaning of 35 U.S.C. § 112, must be decided by a rule of reason applied to the facts of the case.[2]

While there may be factual distinctions between *Metcalfe* and the present case, we agree with appellant that, contrary to the suggestions of the board and solicitor, unpredictable chemical reaction is not a factor here. Moreover, we find no real likelihood of all, or even most, of either the specific materials disclosed being removed from the market or the trademarks or trade names being applied to significantly different products such as to render the present disclosure nonenabling. The risk may be present, but it is small, and occurrence of the event of nonenablement is too remote and speculative to support a rejection under the first paragraph of §

2.  410 F.2d at 1382, 56 CCPA at 1197.

112. See also In re Argoudelis, 434 F. 2d 1390, 1394, 58 CCPA 769, 775 (1970).

The decision of the Board of Appeals is reversed.

Reversed.