Application of Edwin George
Edward HAWKINS.

Patent Appeal No. 9023.

United States Court of Customs
and Patent Appeals.

Aug. 23, 1973.

Jacobs & Jacobs, New York City, attorneys of record, for appellant. Albert L. Jacobs, Jr., New York City, of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision of the board of appeals affirming the rejection of claims 2, 4–15, 17–25, 27, 29–31, 33–69 and 71–75, all of the claims remaining in appellant's application.[1]

### The Invention

Appellant's invention concerns peroxyamine compounds containing the following heterocyclic structural unit:

Claims 2, 8, 15 and 17 are sufficient to give an idea as to the types of compounds involved:

2.  A compound of the formula

$$
\begin{array}{c}
R_1 \\ R_2
\end{array}
C
\begin{array}{c}
NH \\ OO
\end{array}
C
\begin{array}{c}
R_3 \\ R_4
\end{array}
\qquad (II)
$$

wherein $R_1$ and $R_3$ are alkyl of 1 to 10 carbon atoms and $R_2$ and $R_4$ are hydrogen, alkyl of 1 to 10 carbon atoms or aryl.

8.  A compound of the formula

$$(III)$$

wherein $R_5$ to $R_{14}$ are hydrogen or alkyl of 1 to 10 carbon atoms, $R_{15}$ is alkyl of 1 to 10 carbon atoms and $R_{16}$ is hydrogen, alkyl of 1 to 10 carbon atoms or aryl.

15.  A compound of the formula

$$
X \quad C \begin{array}{c} NH \\ OO \end{array} C \quad X' \qquad (IV)
$$

---

1.  Serial No. 651,969, filed July 10, 1967.

wherein X and X′ are divalent aliphatic moieties of from 4 to 11 carbon atoms in the ring and carbon atoms are the only atoms in the ring.

17. A compound according to claim 15 of the formula;

$$\text{(V)},\quad \begin{array}{c} R_{18}\ R_{17}\ NH\ R_{25}\ R_{26} \\ R_{19}\quad R_{27} \\ R_{20}\ OO\ R_{28} \\ R_{21}\ R_{24}\ R_{32}\ R_{29} \\ R_{22}\ R_{23}\ R_{31}\ R_{30} \end{array}$$

$$\text{(VI)},\quad \begin{array}{c} R_{34}\ R_{33}\ NH\ R_{43}\ R_{44} \\ R_{35}\quad R_{45} \\ R_{36}\ OO\ R_{46} \\ R_{37}\ R_{42}\ R_{52}\ R_{47} \\ R_{38}\ R_{39}\ R_{40}\ R_{41}\ R_{51}\ R_{50}\ R_{49}\ R_{48} \end{array}$$

or

$$\text{(VII)}\quad \begin{array}{c} R_{54}\ R_{53}\ NH\ R_{65}\ R_{66} \\ R_{55}\quad R_{67} \\ R_{56}\ OO\ R_{68} \\ R_{57}\ R_{64}\ R_{76}\ R_{69} \\ R_{58}\ R_{59}\ R_{62}\ R_{63}\ R_{75}\ R_{74}\ R_{70}\ R_{71} \\ R_{60}\ R_{61}\ R_{73}\ R_{72} \end{array}$$

wherein $R_{17}$ to $R_{76}$ are hydrogen or alkyl. A number of claims are directed to processes for making appellant's compounds.

As the application was filed, the sole disclosure relating to the utility of the compounds and to how they are used reads as follows:

> These novel compounds may for example be used in the production of valuable monomers for example by the processes described in copending British applications 36107/66, 42756/66, 46971/66, 49699/66, 50324/66, 10070/67, and 10071/67.

### The Rejections

The examiner rejected all the claims "under 35 U.S.C. § 101 and 35 U.S.C. § 112 as being based on a specification that contains an inadequate disclosure of utility." The examiner stated:

> Incorporation of the seven copending British applications (which are unavailable to the public) does not consti-

tute an adequate utility statement. The specification is deemed fatally defective. Specifications must be complete as of filing.

The examiner also rejected a number of the claims under 35 U.S.C. § 112 on various grounds, including their "being based on a specification that fails to effectively support the scope of said claims * * *."

Appellant responded to the first rejection by deleting the cross references to the British applications and replacing them with the actual textual material from those applications, in an amendment which takes up about 44 pages of the printed record. The amendment appears to consist of essentially all of the disclosure contained in the British applications, minus some cross-references and the claims. Of the seven British applications relied on by appellant for teaching methods of using the instantly claimed compounds, five deal with only a single peroxy-amine compound, namely, 1,1′ peroxydicyclohexylamine:

The applications disclose that the above compound, when reacted in various ways, breaks down to give various yields of caprolactam, the formula for which is:

$$\begin{array}{l} CH_2\text{-}CH_2\text{-}CH_2\text{-}CO \\ |\qquad\qquad\quad | \\ CH_2\text{-}CH_2\ \text{-}\ NH \end{array}$$

Four of these applications contain statements to the effect that "[c]aprolactam may be polymerized to give useful polymers for instance nylon–6." The last two applications relied on deal with peroxy-amine compounds in more general terms, disclosing that they can be broken down to form various corresponding lactams. One of the applications contains the statement "[l]actams may be polymerized to give useful products, e. g.

caprolactam may be polymerized to give nylon–6."

The amendment was stated to be made pursuant to MPEP § 608.01(p), and was accompanied by copies of the British applications in question, and by an affidavit by appellant's attorney, to the effect that the amendment corresponds to the subject matter of the British applications, with certain minor, noted exceptions.

The examiner responded with a final rejection in which it was stated that the "amendments to the specification have *not* been *entered,* as they represent new matter, 35 U.S.C. 132." However, a supplement to the final rejection was made by the examiner, in which it was indicated that the amendment to the specification had been entered but was objected to as representing new matter, and that all of the claims were "rejected under 35 U.S.C. § 112, 35 U.S.C. § 132 for being based on a specification that now contains new matter." The board summarized the status of the case before it as follows:

All the claims have been rejected as being based on a specification that contains an inadequate disclosure of utility. This rejection is made under 35 U.S.C. 101 on the basis that the compounds have no utility, and under 35 U.S.C. 112 on the basis that there is no disclosure of how to use the invention.

All of the claims have also been rejected under 35 U.S.C. 112 and 35 U.S.C. 132 as being based upon a specification that contains new matter. The specification is similarly objected to under 35 U.S.C. 112 and 35 U.S.C. 132 as containing new matter.

Claims 2, 4, 8, 15, 17, 27, 29 to 31, and 33 to 65 have been further rejected under 35 U.S.C. 112 because (1) the specification does not effectively support the scope of the claims, and (2) certain of the starting materials have not been shown to be available.

The Examiner has also stated that the process claims 27, 29, 30, 31, and 33 to 63 are unduly multiplied.

The board reversed the multiplicity rejection, and also the rejection stated in the third quoted paragraph insofar as it applied to claims 27, 30, 34–37, 39 and 46–55. The board refused to consider an argument concerning obvious utility for the claimed compounds, and an affidavit in support of that argument, since neither was submitted by appellant until after the examiner's answer. We also decline to rule on that issue, especially considering the fact that neither the examiner nor the board dealt with it.

In sustaining the first rejection, the board stated:

The Examiner did not dispute the fact that appellant had followed the procedure of Manual of Patent Examining Procedure 608.01(p), but maintained that because applications must be complete as filed, it was improper to incorporate subject matter which was not available in the United States Patent Office at the time of filing.

We first note that the Manual of Patent Examining Procedure is merely a guide to the Examiner and is not controlling where it conflicts with the statutes and Rules of Practice. We are aware of no legal precedent in support of the section in issue, and we believe that 35 U.S.C. 111 requires that the disclosure be complete as of the time of filing, and that this requires any matter, which it is desired to incorporate by reference, must be clearly identified as being available in the United States Patent Office by way of a printed publication or a copending United States application. What is available to a foreign patent office is not necessarily available to the United States Patent Office. It may be that such material may never be made available to the United States Patent Office. That it has been made available in this particular case at a later date does not retroactively make

the disclosure complete as of the date of filing.

In the board's view, the same reasoning supported the new matter rejection:

> Because we believe the subject matter of the referenced British applications did not constitute part of the disclosure of the instant case as originally filed, for the reasons given above, we affirm the Examiner's rejection of the claims for new matter.

Finally, with regard to the rejection for "lack of support," the board stated:

> We agree with the Examiner that the broad limitations to "aryl" in claims 2, 4, and 8, "alkyl" in claims 8, 17, 40, 41, 42, 44, 45, 56 to 61, and 65, and "aliphatic" in claims 15, 31, 33, 38, 40 to 43, 56, 57, and 64 are not supported in their scope by the specification. [2]  * * *  The "aryl" groups could be multiple rings, counting as many as twenty or more. Clearly this breadth is not shown to be supported by the original disclosure. Compounds having such complex configurations would not be expected to have even the imprecisely disclosed utility of forming valuable monomers. The same is true of the claimed "alkyl" radicals which may have unlimited chain lengths. Likewise, the "aliphatic" moieties include undisclosed acetylenic unsaturations or diolefinic unsaturations which may have undesirable reactions with the peroxides and may even cause polymerization in an unfavorable manner.

> We find that the specification does not suggest by way of examples or otherwise that appellant believed all "aryl," "alkyl," and "aliphatic" groups would be operable in face of the substantial indications to one of ordinary skill in the art to the contrary.

* * * There can be no patentable invention without utility, and the intended scope of invention cannot be properly ascertained without first ascertaining the utility. We do not believe it to be proper, however, to allow an applicant to prevent a determination of the intended scope by merely omitting a statement of utility. Were appellant to have originally disclosed the utility which he now urges, it is clear to us that the mutiple rings, alkyl groups of unlimited chain length, and the presence of diolefinic and acetylinic unsaturations would interfere with the attainment of the suggested utility and thus render the claims beyond the scope of the invention as disclosed in the specification.

### Opinion

*I. Utility, How to Use, and New Matter.*

In General Electric Co. v. Brenner, 132 U.S.App.D.C. 323, 407 F.2d 1258 (1968), the court considered the difficulties presented when applicants incorporate by reference information contained in other sources, such as patents, publications, etc. After reviewing the cases on the subject and the practicalities of the situation, the court concluded that the practice did indeed have longstanding basis in the law, and that necessarily the Commissioner of Patents is vested with wide discretion to formulate rules and guidelines governing its use, thereby to prevent its abuse.

Following the *General Electric* case, the Commissioner published guidelines with respect to incorporation by reference. 859 O.G. 346 (February 11, 1969), as amended, 861 O.G. 680 (April 15, 1969). Those guidelines have since been incorporated into MPEP § 608.-

---

2. The board also lumped claims 62 and 63 in with this rejection, saying that they were "clearly defective." Claim 62 recites "[t]he process according to claim 2 wherein the temperature is from —10°C to +10°C." Claim 2 recites neither a process nor a temperature, and it appears from the progression of the claims that claim 62 was meant to depend from one of the process claims 58–60 rather than from claim 2. Claim 63 depends from claim 62 and thus suffers the same infirmity. We agree that the claims are clearly defective and thus affirm this rejection.

01(p), which reads in pertinent part as follows:

### Incorporation By Reference

An application for a patent when filed may incorporate "essential material" by reference to (1) a United States patent, or (2) an allowed U.S. application, subject to the conditions set forth below. "Essential material" is defined as that which is necessary to (1) support the claims, or (2) for adequate disclosure of the invention (35 U.S.C. 112). "Essential material" may not be incorporated by reference to (1) patents issued by foreign countries, to (2) nonpatent publications, or to (3) a patent or application which itself incorporates "essential material" by reference. * * *

* * * * * *

The filing date of any application wherein essential material is incorporated by reference to a foreign patent or to a publication will not be affected because of the presence of such reference. In such a case, *as well as any other case which is not entitled to incorporate essential material by reference,* the applicant will be required to amend the disclosure to include the material incorporated by reference. The amendment must be accompanied by an affidavit or declaration executed by the applicant, or his attorney or agent of record, stating that the amendatory material consists of the *same* material incorporated by reference in the referencing application. [First emphasis ours.]

Appellant contends that his deletion of the cross references and replacement with the material cross referenced was the proper procedure, especially under the emphasized language.

Throughout the prosecution of this case the examiner and the board have made it clear that the reason the saving language in MPEP § 608.01(p) could not help appellant was the overriding requirement that the disclosure in the specification must be complete, *i.e.,* it must satisfy the first paragraph of section 112, as of the filing date of the application. As noted above, the board suggested that a statutory basis for a requirement that the disclosure be complete as of that time exists in 35 U.S.C. § 111.

We find that the board's position in the present case is very similar to the position taken by the Patent Office in In re Argoudelis, 58 CCPA 769, 434 F. 2d 1390 (1970). In that case, as here, the disclosure in the specification as filed was not sufficient by itself to enable one skilled in the art to make and use the invention. There too, the thing needed to complete the disclosure was referred to in the specification as filed, but was not available either to the public or to the Patent Office at the time of filing. Also, in both cases it is clear that there had been sufficient technological development to show that the invention was complete at the time of filing.

In *Argoudelis,* we rejected the board's proposition that section 111 of the statute requires that the specification must be enabling as filed. 58 CCPA at 773–774, 434 F.2d at 1392. We again reject it. As this writer pointed out in a specially concurring opinion in *Argoudelis,* the function of section 112 in ensuring *complete public disclosure* is only violated if the *disclosure* is not complete *at the time it is made public, i.e.,* at the issue date. 58 CCPA at 776–777, 434 F.2d at 1394–1395. Of course the separate requirement in 35 U.S.C. § 132, prohibiting the introduction of new matter into the disclosure, strictly limits what can be added to the application after its filing date. Further, for the satisfaction of the second aspect of section 112—that of establishing the filing date as the prima facie date of invention—"it is essential that there be no question that, *at the time an application for patent is filed,* the invention claimed therein is fully capable of being reduced to practice (*i. e.,* that no technological problems, the resolution of which would require more than ordinary

skill and reasonable time, remain in order to obtain an operative, useful embodiment)." Concurring opinion in *Argoudelis*, 58 CCPA at 777, 434 F.2d at 1395; see also the majority opinion, 58 CCPA at 774, 434 F.2d at 1393; both were cited with approval in In re Fouche, 58 CCPA 1086, 1089, 439 F.2d 1237, 1240 (1971). This effectively prevents applicants from patenting pipedreams.

In the present case, we find that all of the above requirements have been met, at least with respect to those claims which the Patent Office found appellant's specification adequate to support. The other claims are dealt with below.

■ We find first that at least so much of the British applications as dealt with the contemplated utility for the present products in making monomers is *not* new matter within the meaning of 35 U.S.C. § 132. It was identified and specifically referred to for that information in the U.S. application *as filed*. Its introduction into the specification was no more the introduction of new matter than the introduction of the application serial number and filing date was in In re Fouche, *supra*. It is apparent from a consideration of MPEP 608.01(p), *supra,* that the Commission would *not* have considered the material to be new matter if it had been "incorporated by reference to a foreign patent or to a publication * * *." We agree with that analysis, but we do not see any valid distinction between those cases and the present one. Whether or not the material was secret at any particular time is irrelevant. The question is whether the later added material was "new" to the disclosure. We hold that it was not.

■ Second, again as to those claims which the Patent Office found to be adequately supported by the disclosure, we find that the material incorporated by reference does fairly disclose methods of using appellant's compounds. This does not appear to have been questioned by the Patent Office. Since that disclosure is now fully a part of the specifica-

tion there can be no question that, *as of the issue date,* the specification will fully disclose to those skilled in the art how to make and use the invention.

Third, this record clearly establishes that, *at the time the application was filed,* the invention claimed in the above-discussed claims was fully capable of being reduced to practice. There is no question that the specification *as filed* disclosed how to make the compounds, and methods of use for the compounds were disclosed in the applications which were filed in the British patent office prior to the filing date of the present application.

■■ We would agree with the *General Electric* case, *supra,* that the Commissioner is vested with broad discretion to determine in what instances mere incorporation by reference is proper and in what instances the material incorporated must be added to the disclosure. However, in the present case, we find that the addition to the disclosure of the textual material originally incorporated by reference cured any defects it might have originally had as filed, and that the application is in compliance with section 112 of the statute. Accordingly, the rejection of claims 5–7, 9–14, 18–25, 27, 29, 30, 34–37, 39, 46–55, 66–69 and 71–75 must be reversed.

## II. The Rejection Based on Lack of Support.

■ In response to the rejection based on lack of support, the appellant states:

The claims herein on appeal are effectively supported by the disclosure because the claims find direct antecedent basis in the disclosure * * *. Thus under In re Robins, 57 CCPA 1321, 429 F.2d 452, In re Marzocchi and Horton, [58] CCPA [1069], 439 F.2d 220, In re Camal and Rogier, 55 CCPA 1409, 398 F.2d 867, and In re Di Leone and Lucas, [58] CCPA [925], [436 F.2d 1404,] the claims are not unduly broad. Since they find full support in the disclosure as a

whole, they are not properly rejectable as unduly broad.

Moreover, appellants have stated what they consider to be their invention and the Patent Office has failed to come forward with so much as a single piece of prior art * * * which would suggest that any of the substituents embraced by the claims herein on appeal would not be operable. All which the record contains is a bare assertion from the Examiner that he questions whether all the substituents embraced by the claims would be operable "in the face of the substantial indications to one of ordinary skill in the art to the contrary" * * *. The Examiner has completely failed to meet his burden of showing what these "substantial indications" are. An unsupported statement of the Examiner clearly fails to carry the requisite weight to hold appellant's claims prima facie unpatentable as embracing inoperable embodiments. In re Miller, [58] CCPA [1182], 441 F.2d 689.

In In re Marzocchi, supra, we stated: [A] specification disclosure which contains a teaching of the manner and process of making and using the invention in terms which correspond in scope to those used in describing and defining the subject matter sought to be patented must be taken as in compliance with the enabling requirement of the first paragraph of § 112 unless there is reason to doubt the objective truth of the statements contained therein which must be relied on for enabling support. Assuming that sufficient reason for such doubt does exist, a rejection for failure to teach how to make and/or use will be proper on that basis; such a rejection can be overcome by suitable proofs indicating that the teaching contained in the specification is truly enabling.

We went on to say that in some cases it may be that "the well-known unpredictability of chemical reactions will alone be enough to create a reasonable doubt * * *" as to enabling support for a claim. Clearly it is incumbent on an applicant to "use some technique of providing teaching of how to use which is commensurate with the breadth of protection sought by the claim, * * *." In re Fouche, supra, 58 CCPA at 1093, 439 F.2d at 1242, see also In re Cook, 58 CCPA 1049, 439 F.2d 730 (1971).

On the other hand, as we said in Marzocchi, "it is incumbent upon the Patent Office, whenever a rejection on this basis is made, to explain why it doubts the truth or accuracy of any statement in a supporting disclosure and to back up assertions of its own with acceptable evidence or reasoning which is inconsistent with the contested statement." We think the explanations of their doubts tendered by the board and the examiner in the present case show those doubts to be reasonable ones in view of the disclosed nature and utility of the compounds.

The point made by the board was that many of the substituents encompassed by the language complained of would "interfere with the attainment of the suggested utility * * *." Appellant points to no error in the board's reasoning, but merely contends that it is unsupported by any citations of prior art. We have examined the whole record, and we find the board's position to be reasonable. Certainly there is nothing in the British applications which would indicate that it is erroneous. Nor does appellant's specification contain any such indications, either in the form of statements which would point out errors in the board's logic or in the form of representative examples. In this last regard, the examiner pointed out:

[I]t should be noted that applicant does not exemplify any alkyl group higher than propyl, and that, for aryl, only phenyl is exemplified.

Re "aliphatic" although applicant modifies this term with a carbon atom limitation, it is to be noted that the examples show only saturated hydro-

*carbon radicals.* Yet "aliphatic" reads on olefinic and acetylenic radicals, as well as radicals containing *any possible substituents.*

For the above reasons, the rejection of claims 2, 4, 8, 15, 17, 31, 33, 38, 40–45 and 56–65 is affirmed.

In summary, the rejection of claims 2, 4, 8, 15, 17, 31, 33, 38, 40–45 and 56–65 is affirmed. The rejection of claims 5–7, 9–14, 18–25, 27, 29, 30, 34–37, 39, 46–55, 66–69 and 71–75 is reversed.

Modified.