Application of Edwin George
Edward **HAWKINS**.

**Patent Appeal No. 8766.**

United States Court of Customs
and Patent Appeals.

Aug. 23, 1973.

Jacobs & Jacobs, New York City, at-
torneys of record, for appellant. Albert
L. Jacobs, Jr., New York City, of coun-
sel.

S. Wm. Cochran, Washington, D.C.,
for the Commissioner of Patents. Fred
E. McKelvey, Washington, D.C., of coun-
sel.

Before MARKEY, Chief Judge, and
RICH, ALMOND, BALDWIN and
LANE, Judges.

BALDWIN, Judge.

This is an appeal from the decision of
the Patent Office Board of Appeals sus-
taining the examiner's rejection of
claims 1, 3–25, and 27–31, all the claims
remaining in appellant's application.[1]
The subject matter of the present claims
is closely related to the subject matter
of the claims contained in In re Haw-
kins Cust. & Pat.App., 486 F.2d 569
(1973), decided concurrently herewith.
Knowledge of the contents of the opin-
ion in *Hawkins* is presumed

### The Invention

The invention in *Hawkins, supra*, con-
cerns certain peroxy-amines and methods
for their preparation. The present in-
vention relates to a process for the pro-
duction of lactams which involves de-
composition of peroxy-amines, such as

1. Serial No. 667,061, filed September 12, 1967.

those peroxy-amines disclosed in *Hawkins*. That process was generally described in the specification, as filed, as follows:

The present invention relates to a process for the production of lactams. Lactams may be polymerised to give useful polymers, e. g. caprolactam may be polymerised to give nylon–6.

According to the present invention the process for the production of lactams comprises heating in the liquid phase a compound of formula

(IV)

where X, X′ are divalent aliphatic radicals, which may be the same or different, to decompose it to lactam.

Compounds of formula (IV) are described in copending British Application 31380/66, 9963/67, 9973/67, 23546/67, 23547/67 cognate.

Claim 1 is representative:

1. The process for the production of lactams which comprises heating in the liquid phase a compound of formula

wherein X and X′ are divalent aliphatic moieties of 4 to 11 carbon atoms which may be the same or different, to a temperature in the range of from 40°C to 200°C to decompose it to a lactam.

With regard to the method by which the peroxy-amines used in the process are obtained, besides the specific references to the British applications, the following general statement was contained in the specification as filed:

Thus in the production of peroxy-amines by reaction of cyclic ketones, hydrogen peroxide and ammonia, the peroxyamine often separates as an oil layer, containing also unchanged ketone, from the aqueous reaction medium.

The preparation of four specific peroxy-amines was described in language of which the parenthesized language in the following quote is typical:

Thus, 3,3′-dimethyl-1,1′-peroxy-dicyclohexylamine

\*    \*    \*    \*    \*    \*

(which may be produced, probably as a mixture of stereoisomers, by reaction of 3-methylcyclohexanone with hydrogen peroxide and ammonia) can be decomposed to give 3-methyl caprolactam and 5-methyl caprolactam.

The other specific peroxy-amines for which methods of preparation were so described are 4,4′-dimethyl-1,1′-peroxy-dicyclohexylamine, 3,3,3′,3′,5,5′-hexamethyl-1,1′-peroxydicyclohexylamine, and 1,1′-peroxydicyclopentylamine.

### The Rejection

The examiner rejected all of the claims under 35 U.S.C. § 112 for failure to disclose how to make the necessary peroxy-amines. The examiner considered such statements as quoted above to be insufficient to tell how the starting materials are prepared since no conditions, solvents, catalyst, etc. are included. The examiner further considered the reference to the British applications to be insufficient to complete the disclosure.

Appellant responded to the examiner's rejection by amending his specification following the above-quoted reference to the British applications by inserting "corresponding to U.S. Serial No. 651,969 [hereinafter '969]." Application '969 is the application involved in the *Hawkins* case, *supra*. Additionally, appellant submitted certified copies of the five British applications referred to in the above quote.

The examiner objected to the insertion of the U.S. serial number as being new matter and rejected the claims additionally under 35 U.S.C. § 132.

The board agreed with the examiner that the present application did not con-

tain a sufficient disclosure of how to make the necessary starting materials. The board held that the original cross-references to the British applications in conjunction with the later submission of the certified copies of those applications was not sufficient to supply the necessary disclosure. The board also considered the insertion of the cross-reference to the U.S. application to be new matter.

After the decision of the board, appellant submitted a request for reconsideration, together with an amendment which was similar to that submitted in In re Hawkins, *supra, i. e.,* it contained the textual material from the British applications referred ,to in the specification as filed. The amendment was accompanied by an affidavit of appellant's attorney to the effect that the amendment corresponds to the text of the British applications, with some minor, noted exceptions. The application was remanded to the examiner for consideration of the proposed amendment. The examiner refused entry of the amendment. In spite of the refusal to enter the amendment, appellant requested the board to consider it in its reconsideration of the case. However, in the board's view it was not within its jurisdiction to rule on the propriety of an examiner's refusal to enter an amendment. The board added that "in any event, the entry or non-entry of the amendment would not effect our decision on sufficiency of disclosure \* \* \*" for the reasons the board held such an amendment not to be sufficient in the *Hawkins* case.

*Opinion*

■ Appellant's first contention is that the original cross-reference in his specification to the British applications coupled with the submission of a certified copy of each application is sufficient assurance that the disclosure of the instant case would be sufficient and further insured that upon issuance of a patent all the necessary information relating to the production of the starting materials used in this process would be readily available to the public. Appellant contends that once the British ap-

plications were supplied the case stood in no different posture than a case containing a cross-reference to a United State application. We must disagree. As we held in *Hawkins, supra,* the specification must be fully enabling as of the issue date, and the Commissioner has a great deal of discretion to determine when the cross-referenced subject matter must be included in the case in order to comply with section 112. There can be no question that if the application as it now stands were passed to issue, the specification would not enable those skilled in the art to make the necessary starting materials. Nor does the specification indicate that a copy of the cross-referenced British applications can be found in the application file.

■ Appellant next takes a position that "the presence in the Specification as Filed of the British Application Numbers, uniquely identified one and only one United States case." Appellant states:

Appellant respectfully submits therefore that the insertion of the serial number of his prior file and copending United States application does not constitute new matter by virtue of the presence in the application as filed of his British priority document numbers of said United States application.

The board responded to this argument as follows:

We do not agree that the British application numbers can be regarded merely as a means of identifying the U.S. application number and that no more than a clerical change is required to change the former to the latter. Most important to this conclusion is the fact that this application as originally filed contained no hint of cross-referencing to a previously filed U.S. application. This is not a case where the third paragraph on page 2 of the specification originally read:

"Compounds of formula (IV) are scribed in copending *U. S. application Serial No. corresponding to* British Application 31380/66,

9963/67, 9973/67, 23546/67, 23547/67 cognate."

As the board noted, the present application as filed contained no cross-reference to any previously filed U.S. application. We agree with the board that the introduction of such a cross-reference was new matter within the meaning of 35 U.S.C. § 132.

Appellant also contends that no cross-references to any other applications were really necessary because the specification as filed contains sufficient disclosure of how to make the required starting materials. We find no need to belabor the points made by the board. Suffice it to say that the board, after reviewing the specification before us as well as that of application No. 651,969, quite correctly concluded that in order to make the peroxy-amines "much more disclosure is necessary than merely stating that the starting material is derived from the appropriate cyclic ketone, hydrogen peroxide and ammonia."

Finally, appellant contends that we should consider the amendment which was refused entry by the examiner. Appellant does not take the position that it is within our jurisdiction to require entry of the amendment but states that "since the Board decided that even were the amendment to have been entered, its decision would not have been affected, it is clear that the Board must have considered the amendment." It is not clear what appellant wishes us to do with the amendment. We have held in *Hawkins, supra,* that a similar amendment was sufficient *in that case* to place the specification in compliance with section 112. Presumably, appellant can refile the present case and resubmit the proposed amendment for the consideration of the examiner. We have found it unnecessary to our decision to consider the proposed amendment.

■ For the reasons stated above, the decision of the board is affirmed.

Affirmed.

MARKEY, Chief Judge (dissenting).

With all respect, I must dissent from the holding of the principal opinion that an amendment to include a cross-reference to a previously filed copending U.S. application, which U.S. application corresponds to incorporated foreign applications, constitutes the introduction of new matter.

The disclosure of the foreign applications was specifically incorporated by reference at the time of filing the present application. The U.S. application corresponding to that disclosure was already pending in the Patent Office. Allowing appellant to amend his specification to introduce the disclosure per se but not the simpler cross-reference to the U.S. application appears inconsistent. In either case the amendment merely adds knowledge which the applicant obviously had in his possession at the time of filing, knowledge which had been presented both in the foreign and U.S. Patent Office, and knowledge which was referred to in the application at the date of filing.

Requiring a further and specific "hint" that a corresponding U.S. application was in existence, by the insertion of a blank for the same at the time of filing, appears to be an unnecessary additional criterion.