58 CCPA

**Application of Alexander D. ARGOU-DELIS, Clarence De Boer, Thomas E. Eble and Ross R. Herr.**

**Patent Appeal No. 8347.**

United States Court of Customs and Patent Appeals.

Dec. 17, 1970.

Roman Saliwanchik, Kalamazoo, Mich., attorney of record, for appellant; Eugene O. Retter, George T. Johannesen, Kalamazoo, Mich., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; R. E. Martin, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and McMANUS, Judge, Northern District of Iowa, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–8 and 10–15 of appellants' application entitled "Composition of Matter and Process." [1] No claims have been allowed.

The claimed inventions are two new antibiotic compounds, sparsogenin and sparsogenin A, and a microbiological process for preparing them. Sparsogenin is produced by the microorganism *Streptomyces sparsogenes* var. *sparsogenes.* During the fermentation for sparsogenin, sparsogenin A is concomitantly produced. Sparsogenin has a broad spectrum of antibacterial activities, moderate activity against several fungi, and it also inhibits the growth of KB human epidermoid carcinoma cells in tissue culture. Sparsogenin A inhibits the growth of Gram-positive and Gram-negative bacteria; it also inhibits the growth of KB cells in tissue culture and Walker adenocarcinoma W–256 in mice.

Approximately three months prior to the filing of appellants' application in the Patent Office, appellants deposited two agar slants of the microorganism in the permanent culture collection of the United States Department of Agricul-

---

1. Serial No. 147,873 filed October 26, 1961.

ture depository at Peoria, Illinois. The culture was added to the permanent collection of microorganisms maintained at the depository and was assigned the numerical designation NRRL 2940.

At the time appellants' application was filed, it was disclosed on page one of the specification that

> The actinomycete used according to this invention, for the production of sparsogenin, has been designated as *Streptomyces sparsogenes* var. *sparsogenes*. One of its strain characteristics is the production of sparsogenin. A subculture of this variety can be obtained from the permanent collection of the Northern Utilization and Research Division, Agricultural Research Service, U. S. Department of Agriculture, Peoria, Illinois, U.S.A. Its accession No. in this repository is NRRL 2940.

All parties concede that with the microorganism at hand the invention can be reproduced without experimentation by one of ordinary skill in the art from the disclosure that followed in the specification. A detailed taxonomic description of the microorganism was also disclosed.

During the course of prosecution the examiner rejected claims 4–8 under 35 U.S.C. § 102(b) as anticipated by a Japanese publication.[2] Appellants argued that the reference lacked an enabling disclosure. The final rejection was appealed and at the hearing before the Board of Appeals the board requested copies of the correspondence relating to appellants' culture deposit. Appellants submitted the requested papers.

The cover letter that accompanied the culture deposit requested that the depository

> * * * withhold distribution of this organism in accordance with the Unit-

ed States Patent Office Rules of Practice, Rule 14, until such time as a United States patent is issued to us which identifies this culture by the NRRL number assigned to it. We will be glad to notify you when such a patent issues.

The return letter from the curator of the depository stated in part:

> Furthermore, insofar as is practicable in carrying out the business of the Department of Agriculture, we shall refrain from distributing this culture pending the issuance of the patent to your Company, with the exception however that access to this culture will be granted by us upon receipt of written authorization from your Company specifying the name and our number of the culture and identifying the party who is to receive it.

Citing the above-quoted correspondence, the board entered a new rejection in accordance with Rule 196(b). The claims were rejected under 35 U.S.C. § 112, paragraph 1.[3] The board reasoned that "the subculture presently cannot be obtained by anyone except nominees of appellants' assignee" on written authorization, and that the deposited specimens are not part of the application and "could not be made a part by language used by appellants' assignee in making the personal deposit." A request for reconsideration was denied.

Renewed prosecution before the examiner resulted in a final rejection of all of the claims as based upon a disclosure defective under 35 U.S.C. § 112, and of claims 4–8 as anticipated by the Japanese publication under 35 U.S.C. § 102(b).

In the second appeal, an augmented five-man board reversed the prior art rejection but affirmed the rejection

---

2. The publication concerned an antibiotic named tubercidin, which appellants had disclosed as having properties similar to sparsogenin A.

3. Paragraph 1 of § 112 provides:
   The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

based upon a deficient disclosure under 35 U.S.C. § 112.

The board took the position that appellants were attempting to comply with the requirements for an enabling disclosure under paragraph 1 of § 112 by depositing the microorganism in a public depository, thus making the microorganism known and available to the public. Noting, however, that if the microorganism is to be considered known to the public, it must be available to the general public at the time of filing, the board stated:

> Appellants do not in fact show or attempt to show that at the time of filing the application the microorganism used was known and available to the public; it is clear from the record that the deposit was secret or confidential and was not available to anyone without appellants' permission.

We do not think that 35 U.S.C. § 112 requires that the microorganism be available to the general public at the time of filing the application. Paragraph 1 of § 112 provides only that the specification enable any person skilled in the art to make and use the invention. The reliance of the board on 35 U.S.C. § 111 [4] as establishing a general requirement that the specification be enabling as of the filing date is not well founded since that section merely refers to § 112 for the requirements concerning the specification.

Ordinarily no problem in this regard arises since the method of preparing almost all starting materials can be set forth in writing if the materials are not already known and available to the workers in the art, and when this is done the specification is enabling to the public insofar as the public has access to the application under Rule 14 and 35 U.S.C. § 122. Appellants, however, because of the particular area of technology involved, cannot sufficiently disclose by written word how to obtain the microorganism starting material from nature.

It has been pointed out in the Amicus Curiae brief that the same predicament exists in the case of asexually reproduced plants. In regard to plants, a general dispensation from the requirements of § 112 has been accorded by 35 U.S.C. § 162. It is urged that the same should be true here. We do not believe that a general dispensation from the statutory requirements of § 112 in the case of microorganisms is necessary, desirable, or within the province of this court to grant. Our task here is not to decide what the general rule should be or to create exceptions to the provisions of § 112, but rather to interpret and apply § 112 to the facts of the case before us. As far as we are able to determine, an issue like the one facing us has never been decided by the courts in this country; therefore, as a matter of first impression, it requires that we analyze anew all of the statutes, law, and circumstances pertaining to this issue.

As mentioned, a unique aspect of using microorganisms as starting materials is that a sufficient description of how to obtain the microorganism from nature cannot be given. Such a description could only detail an experimental screening program similar to the screening programs followed in discovering the microorganism in the first instance. If the microorganism involved were of very common occurrence, it might be found in a relatively short time, but if it were not of common occurrence, it might not be found for a very long time, if found at all. The microorganism involved here, of course, was not known and available to the workers in the art since it was newly discovered by appellants.

Faced with this problem, and in response to the requirements of § 112 for an enabling disclosure, appellants deposited cultures of their microorganism in a public depository in the United

---

4. Section 111 provides in part:
  Application for patent shall be made by the inventor, except as otherwise provided in this title, in writing to the Commissioner. Such application shall include: (1) a specification as prescribed by section 112 of this title * *.

States. This was done before the United States patent application was filed. The written description as originally filed included the name of the depository and its designation of the deposit, in addition to a complete taxonomic description of the microorganism and detailed disclosure of the process for producing the antibiotic from the microorganism. The cultures are to be made available to the public upon issuance of a United States patent which refers to such deposit and prior to issuance of said patent under the conditions specified in Rule 14. Appellants state that the practice of depositing cultures in a public depository has been used for over fifteen years.[5]

It is our opinion that this procedure meets the requirements of 35 U.S.C. § 112. Any person skilled in the art with access to the pending application under Rule 14 and 35 U.S.C. § 122 can reproduce the invention from the written disclosure as it was originally filed. Appellants assured this by the contractual provision which accompanied the culture deposit and which provided for distributing the deposited microorganism in accordance with Rule 14 until the patent issued. As Dr. Hesseltine, curator of the United States Department of Agriculture depository used by appellants, stated in an affidavit submitted to the Patent Office by appellants:

> Whenever a culture of a microorganism is sent to me * * * [by appellants' assignee] for deposit, I am informed by an accompanying cover letter if the culture is being deposited in connection with the filing of a patent application in the United States. * * * Also, the letter calls my attention to Rule 14 of the United States Patent Office Rules of Practice. I understand that Rule 14 provides that access will not be given to "any pending application or papers relating thereto, without the written authority of the applicant, or his assignee or attorney or agent, unless it shall be

necessary to the proper conduct of business before the Office or as provided by these rules," i. e., the Rules of Practice in Patent Cases. In cooperating with a depositor, we refuse access to a culture to anyone not entitled to it under the provisions of Rule 14 and in requiring authorization from the applicant, or his assignee or attorney or agent, or the assurance of the Commissioner of Patents that access to the culture is necessary to the proper conduct of business before the Patent Office or is provided for by the Rules of Practice in Patent Cases.

It is not necessary that the general public have access to the culture prior to the issuance of the patent. The procedure used by appellants is sufficient to constitute a constructive reduction to practice and to entitle appellants to the benefits of a filing date since they clearly demonstrated that they had solved all technological problems involved in producing the invention. The disclosure is sufficient to permit a thorough examination by the Patent Office and to preclude the possibility that a patent could issue without any person skilled in the art being thenceforth enabled to make and use the invention.

The fact that there can be no description in words alone of how to obtain the microorganism from nature does not mean that appellants must make the microorganism available to the general public at the time of filing the application. There is no good reason why an applicant who has invented a process and product involving the use of a new microorganism must surrender his starting materials to the general public before filing, whereas an applicant in the other arts need tell the public nothing until his patent issues. We do not believe that § 112 was designed to achieve such a result.

The only rational ground for concern on the part of the Patent Office appears to be for the permanent availability of

5. A brief general discussion of this practice can be found in Levy and Wendt, "Microbiology and a Standard Format for Infra-Red Absorption Spectra in Antibiotic Patent Applications," J.Pat.Off. Soc., Vol. 37, pp. 855–859, Dec. 1955.

the deposited microorganism. The deposits are not a part of the patent application, and the Patent Office exercises no control over them. This concern may be justified in some situations. A similar problem was involved in In re Metcalfe, 410 F.2d 1378, 56 CCPA 1191 (1969). In that case a starting material was described by reference to the trademark under which it was being sold. This court pointed out:

> * * * (1) there is always the possibility that sometime after the issuance of a patent, the disclosure which was initially enabling may become "unenabling" and (2) whether a given disclosure which identifies a material to be employed in the practice of the claimed invention is "enabling" within the meaning of 35 U.S.C. 112, must be decided by a rule of reason applied to the facts of the case.

After considering the facts, the court concluded that the possibility that at some future date one skilled in the art might no longer be enabled to practice the invention was too speculative to justify a holding that the disclosure was insufficient under § 112.

Applying the same considerations in the present case, we note that (1) a public depository was used; (2) the depository is operated by a department of the United States government; (3) the depository is under a contractual obligation to place the culture in the permanent collection, to supply samples to persons legally entitled under Rule 14 and 35 U.S.C. § 122 to access to appellants' application, and to supply samples to anyone seeking them once the patent issues; and (4) there is nothing in the record to suggest that the cultures will undergo any physical changes which will render them unusable. We conclude that the possibility that the disclosure may someday become non-enabling is even more speculative than in *Metcalfe*, and hence does not render the disclosure insufficient under § 112.

The only issue on appeal is whether appellants' disclosure is sufficient under 35 U.S.C. § 112, paragraph 1. For the reasons given above, we conclude that the disclosure is sufficient. Therefore, the decision of the board is reversed.

Reversed.

BALDWIN, Judge (concurring).

I concur in the Court's decision and believe that the reasoning of the principal opinion is sound. Nevertheless, the importance of this decision impels me to set forth some of my own reasons for finding appellants' disclosure adequate under the first paragraph of 35 U.S.C. § 112.

It is difficult to conceive that at this late date it has not been settled as to when (that is, at what time) a patent specification disclosure must comply with the requirements of the first paragraph of 35 U.S.C. § 112. In any event, such apparently is the case. I submit that the uncertainty in this area, while at least partially due to the use of loose language and/or thinking in deciding earlier cases, may also be the result of a general unawareness of the fact that the "enablement" provisions found in 35 U.S.C. § 112 (which, of course, antedate the present statute) actually play a dual role in our system of patent jurisprudence.

The first aspect of that role is to provide the assurance that the public will, in fact, receive something in return for the patent grant. This consideration is, of course, the full and complete disclosure of how to make and use the claimed invention. Thus, the patent adds a measure of worthwhile knowledge to the public storehouse. The incentive to give this added measure of knowledge to the public, which clearly promotes the progress of the "Useful Arts," is the primary justification for the existence of the patent system.

It should be apparent, however, that this first aspect of the enabling disclosure requirements of section 112, requires only that the adequacy of the teaching disclosure be measured as of

the issue date[1] of the patent. There is no sense in making an applicant publicly disclose any part of his invention, much less its very essence, before he has been assured that he will obtain the protection he is seeking in return for that disclosure.

Practical necessity, of course, requires that an application disclosure be intelligible and capable of evaluation *before* the issue date. The examining bodies of the Patent Office must be able to understand what a claimed invention is, how it works, what utility it might possess, before they can adequately determine whether such invention merits the grant of a patent. One of the considerations involved in that determination is whether the specification disclosure is such "as to enable any person skilled in the art to which [the invention] pertains, or with which it is most nearly connected, to make and use the same." Under my analysis, however, the reference point for this particular evaluation would be the potential issue date of the patent. No rejection on this basis[2] should be made unless the examiner is not satisfied that, *at the time a patent would issue,* its specification disclosure would be such that one of ordinary skill in the pertinent art reading that disclosure could understand the concept involved and would be able to make and use the invention claimed (aided only by his ordinary skill and such existent technology available to him as might be required by the disclosure).

Apart from considerations relating to the adequacy of the specification's teaching disclosure, however, the examination of every patent application involves the further questions of whether the appli-

cant is entitled to a patent under the provisions of 35 U.S.C. §§ 102 and 103. It is here where the enabling provisions of section 112 play their second role. Most, if not all, of the determinations involving the patentable merits of a claimed invention vis-a-vis the prior art require that the application filing date be regarded as the prima facie date of invention. This date is accorded not only to the particular claims which might be under consideration, but also to United States patents which might be asserted as references against those claims. Because the filing date is so important in determining patent rights, it is essential that there be no question that, *at the time an application for patent is filed,* the invention claimed therein is fully capable of being reduced to practice (i. e., that no technological problems, the resolution of which would require more than ordinary skill and reasonable time, remain in order to obtain an operative, useful embodiment). Manifestly, the usual way in which an applicant provides such assurance that his invention has reached the necessary stage of completion is to include in the application a specification disclosure which, in itself, fully constitutes "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and [to] set forth the best mode contemplated * * * of carrying out [the] invention." Thus, when an application is examined for compliance with the enabling provisions of 35 U.S.C. § 112, and the application filing date is

1. I am aware of broad statements in opinions to the effect that the teaching of the patent must be such as to "add to the sum of public knowledge" at the time the patent expires. Insofar as they might be interpreted as suggesting that a patent disclosure need not be enabling until the patent expires, such statements are incorrect and inapplicable to the issues here.

2. Before too much concern is aroused at this point, it should be remembered that the "new matter" provision of 35 U.S.C. § 132 would still be available to prevent issues such as that involved here from arising very often. In most cases, the proscription against new matter will keep an applicant from amending a specification which is not "enabling" at the filing date in order to make it such at any future date.

used as the reference point, the inquiry need not go beyond obtaining the assurance that the claimed invention has been fully completed (in the sense explained above).

In the present case there is no question that, *at the time the patent issues,* one of ordinary skill in this art will be able to make and use the claimed antibiotic compounds from the written description included in the specification coupled only with his ordinary skill and the critical microbes, which will then be readily available to him. Appellants have thus satisfied the first aspect of my analysis. Also, the procedure set up by appellants, including the contracted storage of the microbes with the public depository, when coupled with the written disclosure contained in the specification, satisfies me that anyone having ordinary skill in this art would recognize that the invention claimed was fully completed as of the filing date of the application. For these reasons, I find that appellants' specification fully complies with the requirements of the enabling provisions of the first paragraph of 35 U.S.C. § 112.