Louis I. FELDMAN, Appellant,

v.

Knud AUNSTRUP, Appellee.

Patent Appeal No. 74–602.

United States Court of Customs
and Patent Appeals.

June 19, 1975.

Rehearing Denied Sept. 18, 1975.

Richard R. Trexler, Chicago, Ill. (Olson, Trexler, Wolters, Bushnell & Fosse, Ltd., Chicago, Ill.), attorney of record, for appellant.

Morris Fidelman, James S. Waldron, Washington, D.C. (Fidelman, Wolffe, Leitner & Hiney, Washington, D.C.), attorneys of record, for appellee.

Before MARKEY, *Chief Judge*, and RICH, BALDWIN, LANE and MILLER, *Judges*.

LANE, Judge.

This appeal by Feldman (junior party) is from the decision of the Patent and Trademark Office (PTO) Board of Patent Interferences awarding priority of invention to Aunstrup (senior party).

The issues centers around Aunstrup's specification, which refers to a microorganism culture deposited in a foreign country, and the requirements of 35 U.S.C. § 112, first paragraph. Hence, this case is a sequel to *In re Argoudelis,* 434 F.2d 1390, 58 C.C.P.A. 769 (1970). The board held that Aunstrup's specification satisfies § 112, first paragraph, and we affirm.

### The Subject Matter

The sole count reads:

A process for the preparation of a milk-coagulating enzyme which comprises cultivating a milk-coagulating enzyme producing strain of *Mucor miehei* Cooney et Emerson or a natural or artificial variant or mutant thereof in a suitable nutrient medium, and thereafter recovering the milk-coagulating enzyme from the medium.

The count is identical to claim 9 of the involved Aunstrup application[1] and corresponds substantially to claim 1 of the involved Feldman application.[2]

The microorganism, *Mucor miehei,* is said to be a species of fungus within the genus *Mucor* in the family of *Mucoraceae* in the order *Mucorales.* The inventive process is based on the discovery that *Mucor miehei* produces a milk-coagulating enzyme (rennin) which is useful in cheese making.

As in *Argoudelis,* supra, the microorganism is an essential starting material in the process, it is *not* of common occurrence, and an experimental screening program trying to find the microorganism in nature again might take a very long time. Hence, the parties agree that reference to a deposit of this microorganism is necessary for a sufficient disclosure under 35 U.S.C. § 112, first paragraph.

The applications of both parties contain such references. Feldman's application refers to several cultures of *Mucor miehei* (by code number) deposited at the Northern Regional Research Laboratory (U. S. Department of Agriculture) in Peoria, Illinois. Aunstrup's application refers to a single culture of *Mucor miehei* (by code number) deposited at Centraalbureau voor Schimmelcultures (which translates as Central Bureau for Mould Cultures) in Baarn, Netherlands (hereafter called CBS). Aunstrup's application also gives a detailed morphological description of the microorganism.

### Chronology

The chronology of the pertinent events can be summarized as follows:

| Party Aunstrup | Party Feldman |
|---|---|
| Restricted deposit in CBS Nov. 18, 1965 | |
| British Provisional Specification 51270/65 Dec. 2, 1965 | |
| U.S. Ser. No. 595,643 Nov. 21, 1966 | |
| | U.S. Ser. No. 631,608 April 18, 1967 |
| | U.S. Ser. No. 688,349 Dec. 6, 1967 |
| Deposit made unrestricted March 20, 1969 | |
| Interference declared July 6, 1971 | |

### Facts Surrounding Aunstrup's Deposit

According to Aunstrup's application and his testimony, his specimen of *Mucor miehei* was isolated from a compost pile in his garden in Copenhagen, Denmark, in September 1965. Aunstrup's employer (and assignee) thereafter wrote to CBS with the result that on November 18, 1965 a specimen was deposited with CBS in its collection of "restricted cultures" and given the code number CBS 370.65.

1. Serial No. 595,643, filed November 21, 1966, entitled "Preparation of a Milk-Coagulating Enzyme." The assignee shown in the Declaration of Interference is Novo Terapeutisk Laboratorium A/S of Copenhagen, Denmark.

2. Serial No. 688,349, filed December 6, 1967, entitled "Microbial Rennin," accorded the benefit of Serial No. 631,608, filed April 18, 1967. The assignee shown in the Declaration of Interference is Baxter Laboratories, Inc., of Morton Grove, Illinois.

Dr. Gerardus Albertus De Vries, testifying as an official of CBS, stated that CBS was founded in 1904 by the International Organization of Botanists, that in 1965 CBS was a private foundation which derived financial support from the Dutch government, and that later, in 1968, CBS became part of the Royal Netherlands Academy of Sciences and Arts, which is a governmental organization. Dr. De Vries also testified in detail on the high standards and careful means of preservation employed at CBS to assure permanent viability of the cultures. Dr. Clifford W. Hesseltine,[3] Chief of the Fermentation Laboratory at the Northern Regional Research Laboratory, testified in a private, professional capacity and stated that: "[W]e've had exchanges with C.B.S., and we believe it is a very reliable culture collection."

With respect to a "restricted culture" deposit at CBS, such as CBS 370.65 in 1965, Dr. De Vries stated that such cultures are maintained as a part of the permanent collection, but are made available to third parties only after written consent is given to CBS by the depositor.

Aunstrup further testified that the restrictions on CBS 370.65 were removed on March 20, 1969, by a letter in evidence from Aunstrup's assignee to CBS. Dr. De Vries testified that the official business records of CBS in evidence establish that CBS 370.65 has been unrestricted and "open to the public" since that date. Feldman does not contest this fact.

### The Board

Before the board, there were three issues: (1) whether Aunstrup's British Provisional Specification (relied on under 35 U.S.C. § 119) and his corresponding U. S. application (involved herein) satisfied the requirements of 35 U.S.C. § 112, first paragraph; (2) whether Feldman had abandoned the invention; and (3) whether Feldman's priority proofs established an actual reduction to practice.

The board decided issue (1) in the affirmative and issues (2) and (3) in the negative.

### The Issue

Feldman has appealed only on issue (1). The parties agree that there is no difference in disclosure between Aunstrup's British Provisional Specification and the involved U. S. application. Therefore, the issue narrows to whether Aunstrup's U. S. application satisfies the requirements of § 112, first paragraph. If it does, then Aunstrup is admittedly entitled to the benefit of the filing date of his U. S. application as a "constructive reduction to practice."

### Appellant's Contentions

Feldman's first contention is that "there must be assured availability of the [microorganism] deposit to the United States Patent Office as of the filing date" of the U. S. application and to the public "upon issuance of the patent" in order to satisfy § 112, first paragraph, and that this was lacking in Aunstrup's CBS 370.65 deposit.

Feldman's second contention is that "a private depository, recognized and reputable though it may be, which is not an agency of the United States Government, or any government, and which is located in a foreign country, not subject to United States law, can [not] be an acceptable depository for a United States patent."

In support, Feldman argues that "essentially none of the considerations * * * in *Argoudelis* is present," and that the board erred in concluding that the "conditions" of the Commissioner's Notice of April 29, 1971, 886 O.G. 638 (now MPEP 608.01(p)), may be "retroactively satisfied." The Commissioner's Notice provides:

### Deposit of Microorganisms

Some inventions which are the subject of patent applications depend on the use of microorganisms which must

---

3. This is the same Dr. Hesseltine mentioned in *Argoudelis*.

be described in the specification in accordance with 35 U.S.C. 112. No problem exists when the microorganisms used are known and readily available to the public. When the invention depends on the use of a microorganism which is not so known and readily available, applicants must take additional steps to comply with the requirements of Section 112.

*In re Argoudelis et al.* [434 F.2d 1390, 58 CCPA 769], 168 USPQ 99 (CCPA, 1970), accepted a procedure for meeting the requirements of 35 U.S.C. 112. Accordingly, *the Patent Office will accept* the following as complying with the requirements of Section 112 for an adequate disclosure of the microorganism required to carry out the invention:

(1) The applicant, no later than the effective U.S. filing date of the application, has made a deposit of a culture of the microorganism in a depository affording permanence of the deposit and ready accessibility thereto by the public if a patent is granted, under conditions which assure (a) that access to the culture will be available during pendency of the patent application to one determined by the Commissioner to be entitled thereto under Rule 14 of the Rules of Practice in Patent Cases and 35 U.S.C. 122, and (b) that all restrictions on the availability to the public of the culture so deposited will irrevocably removed upon the granting of the patent;

(2) Such deposit is referred to in the body of the specification as filed and is identified by deposit number, name and address of the depository, and the taxonomic description to the

extent available is included in the specification; and

(3) The applicant or his assigns has provided assurance of permanent availability of the culture to the public through a depository meeting the requirements of (1). Such assurance may be in the form of an averment under oath or by declaration by the applicant to this effect.

A copy of the applicant's contract with the depository may be required by the Examiner to be made of record as evidence of making the culture available under the conditions stated above. [Emphasis ours.]

## OPINION

### *Assured Public Access to the Microorganism Culture*

Feldman's first contention relates to the microorganism deposit at CBS as of the 1966 filing date of Aunstrup's U. S. application and the contention is in two parts: (1) "assured availability" *to the PTO* during pendency of Aunstrup's U. S. application, and (2) "assured availability" *to the public* upon issuance of Aunstrup's application as a U. S. patent.

In regard to part (1), we see no merit. Under the authority of 35 U.S.C. § 114,[4] the PTO may require an applicant to furnish specimens for the purpose of inspection or experiment. PTO Rule 93, 37 CFR 1.93,[5] implements this statutory authority. Hence, there is no question that the PTO *could* obtain access to CBS 370.65 *through Aunstrup* at any time during pendency.

In regard to part (2), Feldman relies heavily upon *Argoudelis* and the Commissioner's Notice of April 29, 1971, 886

---

**4.** § 114. Models, specimens

The Commissioner may require the applicant to furnish a model of convenient size to exhibit advantageously the several parts of his invention.

When the invention relates to a composition of matter, the Commissioner may require the applicant to furnish specimens or ingredients for the purpose of inspection or experiment.

**5.** § 1.93 Specimens.

When the invention relates to a composition of matter, the applicant may be required to furnish specimens of the composition, or of its ingredients or intermediates, for the purpose of inspection or experiment.

O.G. 638. The basic error in Feldman's position is the elevation of the specific facts presented in *Argoudelis* to the status of a rule of law.

*Argoudelis* was "a matter of first impression" wherein this court held that the procedure used by appellants was sufficient to justify the conclusion that their specification satisfied the enablement requirement of § 112, first paragraph. This court's opinion by Judge Almond notes four factors (434 F.2d at 1394, 58 CCPA at 775) which were persuasive:

(1) a public depository was used; (2) the depository is operated by a department of the United States government; (3) the depository is under a contractual obligation to place a culture in the permanent collection, to supply samples to persons legally entitled under Rule 14 and 35 U.S.C. § 122 to access to appellants' application, and to supply samples to anyone seeking them once the patent issues; and (4) there is nothing in the record to suggest that the cultures will undergo any physical changes which will render them unusable.

But this court did not hold, as Feldman contends, that each factory was necessary, or that they were mandatory for a sufficient specification.

■ The Commissioner's Notice, following and citing *Argoudelis,* states that "the Patent Office will accept the following * * * ." It does not say the Patent Office will *only* accept the described procedure. Thus, the Notice does not purport to set forth the minimum requirements, but only a procedure which will assuredly gain PTO acceptance.

■ It is true, as Feldman asserts, that *as of the 1966 filing date* of Aunstrup's U. S. application, there was no guarantee or assurance of access to CBS 370.65 by the public upon issuance of a U. S. patent on the application. However, the enablement requirement of § 112, first paragraph, does not require such assured access to a microorganism

deposit *as of the filing date* ; what is required is assurance of access (to the microorganism culture by the public upon issuance of a patent on the application) prior to *or during the pendency* of the application, so that, upon issuance of a U. S. patent on the application, "the public will, in fact, receive something in return for the patent grant." *In re Argoudelis,* 434 F.2d at 1394, 58 CCPA at 776 (Baldwin, J., concurring).

■ At the time Aunstrup's U. S. application was filed, the invention recited in the count and described in the application was fully capable of being reduced to practice (i. e., no technological problems, the resolution of which would require more than ordinary skill and reasonable time, remained in order to obtain an operative, useful process). Thus, the so-called "second aspect" or second function of § 112, first paragraph—that of establishing the application filing date as the prima facie date of invention—was satisfied by Aunstrup's specification. See *In re Hawkins,* 486 F.2d 569 (CCPA 1973).

■■ The gravamen of Feldman's argument pertains to another function of § 112, first paragraph—that of assuring public access to an essential starting material (the microorganism) in the recited process. This is analogous to the complete public disclosure function of § 112, first paragraph, and that function is only violated if the disclosure is not complete at the time it is made public, i. e., at the issue date. *In re Hawkins,* supra; see *In re Glass,* 492 F.2d 1228, 1234 (CCPA 1974) (Miller, J., concurring). In the present case, this requirement of assured public access to the essential microorganism has been satisfied by Aunstrup's assignee when, on March 20, 1969, during pendency of the involved Aunstrup application, the restrictions on access to CBS 370.65 were removed and the culture was made "open to the public."

### Private Foreign Depository

Feldman's second contention is that CBS, as of the 1966 filing date of

Aunstrup's U. S. application, was a private foreign depository, not an agency of any government, and that these factors render Aunstrup's deposit inadequate per se. Feldman accepts the recognized and reputable status of CBS in 1966, but contends that its private character and its foreign location were fatal defects. The board considered and rejected these arguments.

We concur with Feldman's acceptance of the recognized status of CBS in 1966 (and later). Dr. De Vries' detailed testimony demonstrates the high standards and integrity of CBS. Dr. Hesseltine's expert opinion on the reliability of CBS confirms this point.

■ But we find no merit in Feldman's argument that Aunstrup's deposit was inadequate per se because CBS was a private institution in 1966. As stated in *Argoudelis*: "The only rational ground for concern on the part of the Patent Office appears to be for the permanent availability of the deposited microorganism." 434 F.2d at 1393–94, 58 CCPA at 775. A culture deposited at CBS would appear to be permanently available insofar as the evidence of record demonstrates the painstaking measures employed by CBS to insure permanent viability of the microorganism. CBS has been part of the Dutch government since 1968 and will presumably continue to be financed and supported by that government. Feldman has introduced no evidence even tending to support a contrary view.

We also find no merit in Feldman's argument that Aunstrup's microorganism deposit was inadequate per se because CBS is located in a foreign country. Feldman has cited no case (other than his erroneous interpretation of *Argoudelis* discussed above) or statute in support of his view, nor has he introduced any evidence providing a factual basis to support his argument.

On the contrary, the only record evidence even remotely related to this point is Dr. De Vries' testimony that CBS 370.-65 is "open to the public," which would include "any person skilled in the art" (§ 112, first paragraph), and Dr. Hesseltine's testimony that "we've had exchanges with C.B.S.," which lends support to Aunstrup's view that there is nothing inadequate per se about this particular foreign depository.

We are aware of proposed legislation on this subject of foreign microorganism deposits (see O. Behr, "The Prescient Microbe Or Where To Deposit A Foreign Body," 57 J.Pat.Off.Soc'y 28 (1975)). Under the present law, and on the present evidentiary record, Feldman has not persuaded us of reversible error in the board's decision.

Accordingly, the decision of the board is affirmed.

Affirmed.